### McCOMB v. PACIFIC & ATLANTIC SHIPPERS ASS'N.

### No. 9691.

United States Court of Appeals
Seventh Circuit.

June 17, 1949.

---

412

William S. Tyson, Solicitor, Joseph M. Stone, Attorney U. S. Department of Labor, Washington, D. C., Herman Grant, Acting Regional Attorney, Department of Labor, Chicago, Ill., Bessie Margolin, Assistant Solicitor, William A. Lowe, Attorney, United States Department of Labor, Washington, D. C., for appellant.

David Axelrod, Jack Goodman, Carl L. Steiner, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MAJOR, Chief Judge.

This action was brought by the Administrator of the Wage and Hour Division, United States Department of Labor, to restrain defendant from violating the overtime and record-keeping requirements of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., subsequently referred to as the Act. The District Court, after trial, entered its findings of fact and conclusions of law, and rendered judgment dismissing the complaint.

The defendant is an Illinois corporation with its principal place of business in Chicago, Illinois, and maintains offices in approximately 35 cities throughout the United States. It is engaged in the business of collecting, forwarding and the distribution of freight. It is conceded that the nature of defendant's business is such that its employees are engaged in activities involving interstate commerce.

While numerous violations were alleged in the complaint, including the claim that defendant had 75 employees who were being compensated contrary to Sec. 207 of the Act, all the alleged violations were, prior to the hearing, adjusted or remedied by the defendant in a manner satisfactory to the plaintiff, except as to the wage plan by which eight rate clerks and warehouse employees (the only employees presently involved) were compensated. This situation was noted by the lower court in its finding, "That although the defendant had been guilty of certain violations under the Act, these violations had admittedly been corrected prior to the filing of the Complaint for Injunction in the instant case."

From a stipulation of facts entered into by the parties it is shown that as to these rate clerks there was set up on defendant's records an hourly rate which, with time and one-half after 40 hours, would equal the total amount paid them in weeks in which they worked 48 hours. The record shows the number of hours worked by these employees was less than 48 hours in any week. It was also stipulated that several former employees had been paid the same amount each week for varying hours in excess of 40 a week. In other words, each employee received a guaranteed minimum wage based on a 48 hour week. They were paid twice a month and, according to the plan, received the same amount of compensation regardless of the number of hours employed up to 48, figured, however, on the basis of so much per hour for 40 hours, and time and one-half for the hours in excess of 40 but not exceeding 48. The plan also provided additional compensation at the one and one-half rate for hours worked in excess of 48. And it was stipulated that "The employees in question who work more than 40 and less than * * * 48 hours receive substantially more compensation under the present method of payment, than they would receive, if they were paid at the hourly rate set up on the books of the defendant, with time and one-half that rate for the hours actually worked in excess of 40."

Any attempt on our part to analyze the numerous cases relied upon by the parties in support of their respective contentions would be wasted effort. A few may be noted. 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432, 169 A.L.R. 1293; Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312; Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed.

1716; McComb v. Utica Knitting Co., 2 Cir., 164 F.2d 670, and Walling v. Uhlmann Grain Co., 7 Cir., 151 F.2d 381. The case most strongly relied upon by the plaintiff is the decision of this court in the Uhlmann Grain Co. case, and the one most favorable to the defendant is the Utica Knitting Mills case. A reading of these and other cases makes it plain that each is made to depend in the main on its own particular facts.

Prior to the commencement of the hearing of testimony in the court below, counsel for the plaintiff, referring to the stipulation which had been entered into by the parties, stated, "It leaves open for oral testimony the understanding of the witnesses, or the understanding of the employees themselves as to the manner in which they are being paid. * * * so it is important to know what they understood and how they were hired." And further, it was stated that the testimony would be devoted to "showing what the understanding was on the part of the employees in question, as to how they were being paid, and anything relating to that which would tend to indicate their true understanding of the point."

Thereupon, the plaintiff called four witnesses, Walters, Hanson, Klemm and Gable. As found by the court below, Walters and Hanson left defendant's employ in December 1947, and were unable to testify as to defendant's present manner of operations. Klemm testified that he was hired at an hourly rate of $1.00 per hour, with time and one-half for hours worked over 40, and that when he worked over 40 hours he was actually paid time and one-half for his work. Gable testified to the same effect but even more emphatically, that he was paid a guaranteed salary based on a 48 hour week, with straight time for the first 40 hours and time and one-half thereafter, that he was paid additional compensation for any hours worked over 48 in any week, and that he preferred to have a guaranteed salary so that he could properly budget himself.

The defendant called three witnesses, Gaunt, Pehanich and Francis, and it was agreed that the testimony of three other of defendant's present employees would be substantially the same if called and examined. Each of the witnesses called by the defendant testified that while they were paid a guaranteed salary they knew that it was based on an hourly rate, with time and one-half for overtime, and they all testified in effect that they preferred a guaranteed salary and that they were perfectly satisfied with the arrangement. This was all the testimony except that of defendant's president, who pointed out the nature of defendant's business was such that it was irregular from the standpoint of work to be done, that the guaranteed wage agreements of the company exceeded the minimum required by the Act in all cases, and always had, and that the defendant had corrected such deficiencies and omissions as had been called to its attention by the plaintiff.

If the understanding of the employees involved in the instant dispute relative to the method by which they were being compensated is material, as we think it is and as counsel for plaintiff stated at the hearing below, it is evident that there is no merit in plaintiff's contention here. As noted, all the witnesses presently employed, both those for the plaintiff and the defendant, testified without equivocation, as the court below found, that while they were compensated on a guaranteed salary basis they understood that such salary was predicated upon an hourly rate, with time and one-half for overtime, and that they not only were satisfied but that they desired such an arrangement.

There is no basis in fact for plaintiff's contention that defendant devised an artificial method of payment or that the agreement with its employees is other than bonafide. Defendant's method of compensating its employees was not only understood but satisfactory to them and was utilized for compliance with and not for evasion of the requirements of the Act. We think the court below was entirely justified in denying the restraining order and dismissing the complaint.

The order appealed from is

Affirmed.